IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Eng Phomphackdi, ) | C/A No. 0:10-2633-DCN-PJG |
| ) | |
|                Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Willie L. Eagleton, *Warden*; Richard C. ) | |
| Bearden, Jr., Physician; F. Hyatt, MD; J. ) | |
| Valpey, MD; M. Benior, MD; and Ms. ) | |
| Redfean Miller, in their official and individual ) | |
| capacities, ) | |
| ) | |
|                Defendants. ) | |
| _____ ) | |

The plaintiff, Eng Phomphackdi ("Phomphackdi"), filed this matter pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 33.) By order of this court filed pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal and summary judgment procedures and the possible consequences if he failed to respond adequately. (ECF No. 34.) Phomphackdi filed a response in opposition to the defendants' motion (ECF No. 39), and the defendants replied (ECF No. 40). Having carefully considered the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted.

**BACKGROUND**

Phomphackdi's Amended Complaint alleges that the defendants were deliberately indifferent to his medical needs following an incident at the Evans Correctional Institution ("Evans") in which Phomphackdi sustained an injury to his collarbone when he fell while playing racquetball.

Phomphackdi was seen at Marlboro Park Hospital where it was determined that his collarbone was broken. Phomphackdi contends that the doctor at the hospital informed the corrections officer that Phomphackdi needed to be transported to a different hospital to "have his collarbone fixed." (Am. Compl., ECF No. 27-1 at 3.) Phomphackdi alleges that Warden Eagleton refused the transport request, and Phomphackdi was returned to Evans. Phomphackdi was transported following day to the orthopaedic clinic at Kirkland Correctional Institution ("Kirkland") where he was seen by Defendant Bearden, who confirmed that Phomphackdi's collarbone was broken and told Phomphackdi that "it could be fixed, but he was not capable of it." (Id.) Phomphackdi alleges that the defendants failed to follow the recommendations from the doctor at Marlboro Park Hospital and appears to allege that the defendants failed to provide him with appropriate medical treatment. Phomphackdi seeks damages and injunctive relief against the defendants. (See generally Am. Compl., ECF No. 27.)

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).



In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Exhaustion of Administrative Remedies**

As an initial matter, the defendants claim that Phomphackdi failed to properly exhaust his administrative remedies in accordance with 42 U.S.C. § 1997e(a) because he did not appeal his Step 2 prison grievance to the South Carolina Administrative Law Court. (See generally Simmons Aff. ¶ 11, ECF No. 33-2.) However, Phomphackdi's Amended Complaint attaches an order of the Honorable John D. McLeod, Administrative Law Judge, dismissing his appeal with prejudice on



December 21, 2009. (See ECF No. 27-2 at 21-22.) Accordingly, the defendants have failed to carry their burden to show that Phomphackdi failed to properly exhaust his administrative remedies in accordance with § 1997e(a). See Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005) (indicating that the defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies).

**C.     Deliberate Indifference—Medical Treatment**

Phomphackdi's Eighth Amendment claim nonetheless fails as a matter of law. To establish a claim under the Eighth Amendment for deliberate indifference to medical needs, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Id. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 847; Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn,

PJG

896 F.2d 848, 851 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

A prisoner's disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact. See Nelson, 603 F.3d at 449; see also O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

Phomphackdi has failed to provide any evidence from which a reasonable jury could find deliberate indifference to his medical needs. Phomphackdi's Amended Complaint alleges that after his fall, he was sent to the medical facility at Evans, at which time an ambulance was called and he

was transported to Marlboro Park Hospital. (Am. Compl. ¶¶ 1-3, ECF No. 27-1 at 3.) X-rays were taken at the hospital, and Phomphackdi was diagnosed with a broken collarbone. (Am. Compl. ¶ 4, ECF No. 27-1 at 3.) Phomphackdi states he was given two shots for pain and that his arm was put in a sling. (Id.) Phomphackdi alleges that Warden Eagleton ignored medical orders given by the hospital doctor that Phomphackdi be transported to a different hospital to "have his collarbone fixed." (Am. Compl. ¶¶ 5-6, ECF No. 27-1 at 3.) Phomphackdi also alleges that the next day he was seen at Kirkland, where the doctor, Defendant Bearden, informed Phomphackdi that his broken collar bone "could be fixed, but that he was not capable of it." (Am. Compl. ¶ 7, ECF No. 27-1 at 3.) Phomphackdi alleges that two doctors, Defendants Hyatt and Benior, failed to follow the recommendations received at Marlboro Park Hospital. (Am. Compl. ¶¶ 8-9, ECF No. 27-1 at 3.)

The record contains no support for Phomphackdi's assertions. In support of their motion for summary judgment, the defendants have provided Phomphackdi's medical records, which show that Phomphackdi was seen multiple times in the days following his injury and continued to receive follow-up treatment over the course of the next year. (See generally Medical Records, ECF No. 33-3 at 5-17 & ECF No. 33-4.) The defendants have also provided an affidavit stating that Phomphackdi was provided appropriate medical treatment in accordance with the standard procedure of care for a patient sustaining a broken collarbone. (See generally Smith Aff., ECF No. 33-3 at 1-4.)

A review of the medical records shows that Phomphackdi was transported to Marlboro Park Hospital on August 9, 2009 where he was diagnosed with a left clavicle fracture and left AC joint separation. (ECF No. 33-4 at 34.) Phomphackdi was seen by Dr. Richard L. Rogers, whose notes indicate that he contacted Dr. David Koon at Palmetto Richland Hospital regarding Phomphackdi's injury. (Id. at 31.) According to Dr. Rogers's notes, Dr. Koon advised Dr. Rogers to put

Phomphackdi's left arm in a sling and to schedule Phomphackdi to be seen the next morning at the orthopedic clinic at Kirkland. (Id.) The instructions at the time of his discharge from the hospital clearly state: "FOLLOW UP WITH ORTHOPEDIC DOCTOR IN COLUMBIA AT KIRKLAND IN AM. WEAR SLING UNTIL SEEN BY ORTHOPEDIST." (ECF No. 33-4 at 15; see also ECF No. 33-4 at 39.) Contrary to Phomphackdi's assertions in his Amended Complaint, neither Dr. Rogers's notes nor the medical records from Marlboro Park Hospital indicate that Phomphackdi required or was recommended for transfer to another hospital to treat his collarbone injury. (See ECF No. 33-4 at 15, 27- 34.) As scheduled, Phomphackdi was transported to the orthopedic center at Kirkland on August 10, 2009 where he was prescribed pain medicine and a sling, and scheduled for a follow-up visit in two weeks. (ECF No. 33-4 at 2.) At his follow-up appointment on August 24, 2009, Phomphackdi was seen by Dr. Koon—the doctor whom Dr. Rogers had consulted during Phomphackdi's initial examination at the hospital. During this visit, Phomphackdi reported to Dr. Koon that his pain had improved, and Dr. Koon scheduled another follow-up appointment at the orthopedic clinic. (ECF No. 33-4 at 5.) Phomphackdi's medical records reveal that over the next several months he reported to sick call at Evans numerous times complaining of shoulder pain and that pain medication was prescribed. Phomphackdi was also seen for several follow-up visits to the orthopedic clinic at Kirkland, and follow-up x-rays in November 2009 indicate that his fracture had healed. (See Medical Encounters 110, 93, 86, ECF No. 33-3 at 5-6, 10, 11; see also Smith Aff. ¶ 10, ECF No. 33-3 at 3.)

  Thus, Phomphackdi's claim of deliberate indifference to a serious medical need fails because the record unequivocally shows that Phomphackdi was repeatedly seen and treated by medical staff at the time of his injury and throughout the following year. Moreover, as stated above, Phomphackdi does not have a claim against the defendants merely because it appears he disagrees with the course

of treatment he received. See Jackson, 846 F.2d at 817; Nelson, 603 F.3d at 449; see also O'Connor, 426 F.3d at 202; Dulany, 132 F.3d at 1240; Fleming, 423 F. Supp. 2d at 1070. At most, Phomphackdi's claims allege negligence or medical malpractice, which is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

To the extent that Phomphackdi is seeking to raise state law claims of negligence or medical malpractice, South Carolina law requires a plaintiff to file an affidavit of an expert witness with his complaint when asserting a claim of professional negligence against a professional licensed or registered with the State of South Carolina. S.C. Code Ann. § 15-36-100(B); Martasin v. Hilton Head Health Sys. L.P., 613 S.E.2d 795, 799 (S.C. Ct. App. 2005); Jernigan v. King, 440 S.E.2d 379, 381 (S.C. Ct. App. 1993). This requirement also includes nurses. See S.C. Code Ann. § 15-36-100(G). It is undisputed that Phomphackdi has failed to file an expert affidavit with his Complaint, and therefore he cannot proceed with a state law claim of negligence or medical malpractice against Defendants Bearden, Hyatt, Valpey, Benior, and Miller.

**D.     Official Capacity Claims**

To the extent that the defendants are sued in their official capacities for monetary damages, they correctly assert that they are immune from suit in this court. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or

PJG

by Citizens or Subjects of any Foreign State." U.S. Const. art. XI. Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). As arms of the state, they are entitled to sovereign immunity and cannot constitute "persons" under § 1983 in that capacity. Will, 491 U.S. at 70-71; see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993) (stating that absent waiver of Eleventh Amendment immunity, "neither a State nor agencies acting under its control may be subject to suit in federal court") (quotations and citations omitted). Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. See S.C. Code Ann. § 15-78-20(e). Accordingly, to the extent the defendants are sued in their official capacities, they are immune from suit. Will, 491 U.S. at 70-71; see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

**E.      State Law Claims**

To the extent that Phomphackdi's Complaint could be construed to state any other claims arising under state law, the court should decline to exercise supplemental jurisdiction over those claims. See 28 U.S.C. § 1367(c).

*PJG*

**RECOMMENDATION**

For the foregoing reasons, the record shows as a matter of law that Phomphackdi is not entitled to the relief he seeks. Accordingly, the court recommends that the defendants' motion for summary judgment be granted. (ECF No. 33.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 28, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).